UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KERRIAN SHIRLEY,

Petitioner,

v.

BRUCE SCOTT, *Warden of the Northwest ICE Processing Center*, and MARKWAYNE MULLIN, *Secretary of the United States Department of Homeland Security*,

Respondents.

CASE NO. 2:26-cv-02980-BAT

**ORDER GRANTING HABEAS PETITION AND ORDERING RELEASE**

Petitioner Kerrian Shirley is detained by Immigration and Customs Enforcement at the Northwest ICE Processing Center (NWIPC). She petitions the Court under 42 U.S.C. § 2241 for immediate release from detention or, in the alternative, immediate release under conditions of supervision, contending that she is detained based on a bond decision that was arbitrary, conclusory, reflective of an abuse of discretion, and devoid of any reasoned or individualized analysis and unsupported by the record. Dkt. 1 (Petition). The Court **GRANTS** the habeas petition and **ORDERS** Petitioner's release within twenty-four (24) hours of this Order.

## BACKGROUND

Petitioner, a citizen of Jamaica, was inspected and admitted to the United States in February 2016 as a nonimmigrant visitor with authorization to remain until August 2016. Dkt.

10, ex. A. She remained in the country after the expiration of her visa and has resided here ever since. Dkt. 11, ex. D.

Petitioner resides in Everett, Washington with her mother, a lawful permanent resident, for whom petitioner serves as a caregiver. Petition at 3. She has two sisters who are United States citizens and who reside in New York and a brother who is a lawful permanent resident and who resides in Canada. *Id.* Her mother is currently staying with petitioner's sisters in New York and intends to return to Everett upon petitioner's release so petitioner can resume caring for her. *Id.* Petitioner has no criminal history. Dkt. 10, ex. A.

On July 5, 2026, petitioner drove her brother to the Peace Arch border crossing in Blaine, Washington, intending to drop him off to return to his residence in Canada. Dkt. 11, ex. D. Petitioner inadvertently entered the north-bound border crossing lanes and proceeded to the Canadian border. *Id.* Canadian authorities denied her entry and directed her back to the United States. *Id.* Upon her return, U.S. Customs and Border Patrol detained petitioner and later transferred her to the NWIPC. Dkt 8 at 2. She has remained detained since July 5, 2026. *Id.*

After her detention, the Department of Homeland Security initiated removal proceedings against petitioner. Dkt. 10, ex. B. Also, after her detention, petitioner applied for cancellation of removal (Form EOIR-42B) and for asylum, withholding of removal, and protection under the Convention Against Torture (Form I-589). Dkt 11, ex. D; Petition at 3. A merits hearing on her applications is scheduled for September 21, 2026. Dkt. 8 at 2.

Petitioner sought a custody redetermination, and on August 12, 2026, the Immigration Judge ("IJ") conducted a bond hearing, a recording of which is in the record. Dkt. 11, ex. E (Recording). The following section is based on a review of that hearing recording: Petitioner stated that she had lived in the United States for over 10 years, she had applied for cancellation

of removal, her lawful permanent mother is dependent on her for care, and her United States citizen sister is willing to sponsor her. She stated she has been living off savings and is trained as a chef and would work in that capacity if she gets a work permit. She described the circumstances of her detention at the Blaine border crossing, stated she has no criminal history, and stated that she believes she is not a danger or a flight risk.

The government argued petitioner was a flight risk based on petitioner's visa overstay and the fact petitioner did not file an application for relief until after she was detained. The government also noted a discrepancy in petitioner's statements about whether she had worked in the United States, asserting this raised a credibility issue.

The IJ stated petitioner violated her immigration status and stated she found it hard to accept petitioner would comply now or for any future hearings. The IJ asked why petitioner did not return to her country when she was supposed to. Petitioner responded her twin sister had died under mysterious circumstances in Jamaica and she was afraid to return, and she did not know she was eligible to apply for relief but when she learned she could, she did. The IJ inquired as to petitioner's mother's current living situation, and petitioner answered her mother was staying with her sister while petitioner was detained but intended to return to Everett when petitioner was released.

At the conclusion of the hearing, the IJ found petitioner was a flight risk but did not find that she was a danger. The IJ provided no explanation for this finding.

The IJ issued an order on a check-box form with boxes filled to indicate petitioner's request for a change of custody status was denied and she remains at no bond. Dkt. 11, ex. D. The box for flight risk was checked but not the box for danger to the community. *Id.* The box for "OTHER" was checked; within that section of the form the IJ did not check a box to indicate

whether conditional release was granted, denied, or not requested, but checked boxes to indicate "Ability to pay considered" and "Failure to appear and address requirements provided." *Id.* Petitioner reserved her right to appeal the bond decision but did not file an appeal. *Id.*; Dkt. 8.

## DISCUSSION

The Court has authority to grant habeas relief if petitioner demonstrates her custody violates the Constitution, laws, or treaties of the United States under 28 U.S.C. § 2241(c)(3). Under 28 U.S.C. § 2241, federal courts have jurisdiction over challenges to the detention of noncitizens before removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). This Court has jurisdiction to review immigration custody determinations for legal error, including whether an IJ's bond decision was arbitrary, applied the wrong legal standard, or violated due process. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

### A. Exhaustion of administrative remedies

Respondents argue petitioner has made no attempt to exhaust her administrative remedies and she has not demonstrated the Court should waive the prudential exhaustion requirement. Dkt. 9-1 (Return) at 5.

Whether petitioner must exhaust her administrative remedies in the habeas context "is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Even if these factors weigh in favor of requiring exhaustion, "there are

a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Regarding the *Puga* factors, respondents argue petitioner should be required to exhaust her administrative remedies because the Board of Immigration Appeals ("BIA") has subject-matter expertise for individual bond decisions, even if its review would not reach the constitutional claims at issue in this case, that waiving exhaustion would facilitate forum shopping, and that BIA review would preclude the need for judicial review. Return at 6-7.

First, although the BIA may have general subject-matter expertise in immigration custody and bond matters, it has no special expertise in resolving the constitutional and legal questions presented here and, indeed, lacks authority to adjudicate such matters. *See W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 20, 2026); s*ee also Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile"). This factor weighs against requiring prudential exhaustion.

Second, although relaxation of prudential exhaustion may, to some extent, encourage others to bypass the administrative appellate procedures, this case presents a legal question about whether the bond hearing met constitutional requirements, not a request for de novo review of the IJ's discretionary bond determination. *See Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025). A decision would likely "be beneficial to provide the specific immigration court, which regularly handles bond hearings, with guidance on the types of

circumstances that may lead to a finding of constitutional deficiency." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026). This factor weighs neutral.

And third, the Court finds no reason to delay review in a case where the claim is constitutional and legal errors have resulted in continued detention. Moreover, given the lengthy delays inherent in the current appeals process, the Court finds petitioner will suffer irreparable injury if she is required to wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)). This factor weighs against requiring prudential exhaustion. The Court therefore finds that the *Puga* factors weigh in favor of waiving the exhaustion requirement.

Regarding the *Laing* factors, respondents argue petitioner has presented no evidence to support her assertion that the length of time it takes the BIA to complete its review makes an administrative appeal inadequate and that the mere passage of time or delay inherent in the administrative process is insufficient to establish irreparable harm. Return at 8-9. However, courts in this District have noted that the exhaustion of an administrative appeal of a bond denial typically takes "substantially longer" than six months. *See Vasquez Lopez v. Hernandez*, No. C26-775, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months); *see also Soriano*, 2026 WL

969764, at *4 (finding, where petitioner brought habeas petition challenging his bond denial, "given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."). Under these circumstances, the Court finds administrative remedies are inadequate or not efficacious and that even if petitioner's administrative appeal is ultimately successful, she will have suffered irreparable injury during the long wait.

For all these reasons, the Court waives any requirement that petitioner exhaust her administrative remedies before seeking habeas relief.

**B. The IJ's bond determination**

Petitioner argues the IJ's bond determination was arbitrary and an abuse of discretion. Petition at 6. Respondents argue the IJ's decision rests on a reasonable foundation under *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Return at 10-11.

This Court's habeas review of the IJ's determination as to dangerousness or flight risk is for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779, 784-85 (9th Cir. 2024). Under an abuse of discretion standard, the court cannot reweigh evidence; the Court can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)). "When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. Jan. 16, 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion

itself that he simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240).

When determining whether a noncitizen is a danger to the community or risk of flight, the IJ weighs nine factors pursuant to BIA precedent. *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) and *Martinez*, 124 F.4th at 783). These nine factors that an IJ may consider include any or all of the following:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). These factors "grant an IJ broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id*. at 783–84.

Here, because no opinion of the IJ is available, "the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [petitioner] posed a flight risk" and a danger. *W.T.M. v. Bondi*, No. C25-2428, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (alteration in original) (quoting *Garcia v. Hyde*, No. C25-585, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025)). The Court finds that it could not.

In support of her motion for bond redetermination, petitioner submitted a brief addressing each of the *Guerra* factors as follows: (1) she has a fixed address in the United States; (2) she has resided in the United States, and specifically in western Washington, since she arrived in 2016, a

period of over ten years; (3) she has family members who are citizens or lawful permanent residents and has an available family-related path to permanent residence as caregiver to her lawful permanent resident mother; (4) upon release her sponsor will assist her and she will seek employment authorization; (5) she has never been in removal proceedings before and has never willfully failed to appear for a court proceeding of any kind; (6) she has no criminal record; (7) her sole immigration violation is that she remained beyond the period authorized by her 2016 visa; (8) she has never attempted to flee prosecution or escape from authorities; and (9) her manner of entry was lawful and did not involve entering without inspection or fraudulent documents. Dkt. 11, ex. D. Along with her brief, petitioner submitted letters of support from her mother, sister, and friends in the community and a letter confirming her caregiver role for her mother. *Id.*

The government filed no written brief and submitted as evidence DHS Form I-213 (record of deportable/inadmissible alien), a record of sworn statement made by petitioner at the time of her detention, and petitioner's application for 42b cancellation. Dkt. 11, ex. D. None of this evidence contradicted the facts or arguments submitted by petitioner. At the hearing, the government argued petitioner was a flight risk based on petitioner's visa overstay and the fact that she did not file an application for relief until after she was detained. The government did not otherwise address the *Guerra* factors. The government also asserted a discrepancy in petitioner's statements about whether she had worked in the United States raised a credibility issue.

The IJ did not explain her finding petitioner is a flight risk in either an oral or written decision, leaving the Court to speculate as to the reasons for this finding. Even if the Court were to presume that the IJ's questions regarding petitioner's visa overstay establish the basis for the IJ's denial of bond (something not actually articulated by the IJ), the fact petitioner overstayed

her visa is not, in and of itself, sufficient to establish flight risk—otherwise, every individual detained for an immigration violation would be denied bond and there would be no reason to consider the *Guerra* factors at all.

Because the IJ did not provide any reasoned basis for the bond determination, the Court is left to speculate on how the IJ viewed the evidence in light of the applicable factors. But mere speculation cannot establish a decision had a reasonable basis in the evidence. The lack of any connection between the evidence before the IJ and the finding of flight risk renders the denial of bond arbitrary and an abuse of discretion. Because of this, the proceeding was fundamentally deficient, and petitioner was denied due process of law. Accordingly, the Court finds that petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

**C. Remedy**

Because Petitioner's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for her continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 2026 WL 969764, at *6 (ordering petitioner's immediate release after finding no basis for continued detention); *Miri v. Bondi*, Case No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026), at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond). Accordingly, the Court **ORDERS**

petitioner's immediate release from immigration detention.

## CONCLUSION

For the forgoing reasons, the Court **ORDERS**:

1. Petitioner's petition for writ of habeas corpus (Dkt. 1) is **GRANTED**.

2. Respondents shall **RELEASE** petitioner with reasonable conditions within 24 hours of the date and time this Order is filed.

3. Respondents shall file a **CERTIFICATION** that petitioner has been released no later than 48 hours from the date and time this Order is filed.

4. Petitioner's counsel may move for EAJA fees and costs consistent with the law and the statute.

DATED this 22nd day of September, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge